United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT KEITH BELL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHRISTOPHER KROL, et al.,<br><br>　　　　　Defendants. | Case No. 13-cv-05820-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 217 |

Defendant City and County of San Francisco (the "City") has again moved to dismiss plaintiff Vincent Bell's second cause of action (42 U.S.C. § 1983 – *Monell* Liability and Supervisory Liability against the City and County of San Francisco), this time from the third amended complaint ("TAC"). The City also moves to strike certain allegations from the TAC. In the alternative, the City seeks a more definite statement.

The parties have also raised a discovery dispute regarding whether the City should designate a Rule 30(b)(6) deponent on two topics related to the *Monell* claim. Dkt. No. 220.

These matters came on for hearing on November 17, 2023.

**BACKGROUND**

Plaintiff Vincent Bell has been a pretrial detainee in the custody of the San Francisco County Jail since 2012. Dkt. No. 48 at 2. This lawsuit stems from an incident on August 13, 2013, in which plaintiff alleges that officers at the jail used excessive force against him.[1]

---

[1] In his complaint and amended complaint, plaintiff alleged that the force was used on September 22, 2013. However, in a later filing, plaintiff stated that he had the wrong date, and that the force had been used on August 13, 2013. Dkt. No. 48 at 1.

## I.     Factual Background

The following allegations are taken from Exhibit 1 to the TAC, which are the hand-written allegations from plaintiff's amended complaint that he filed *pro se* in September 2014. Plaintiff alleges that, on the date in question, he was beaten up by San Francisco Sheriff's Department officers De Los Reyes, Lee, Gatman, and Herron, and Lieutenant Krol. Plaintiff alleges that they first beat up him outside of his cell, after plaintiff was returning from the shower to his cell in his wheelchair. Then they forced plaintiff – who has one leg amputated – to hop on his remaining leg for about 100 feet to a safety cell. They also dragged him "a lot!" TAC, Ex. 1 at 5. Once in the safety cell, they beat him up again. The next day, a staff psychiatrist released plaintiff from the safety cell; after interviewing him about what happened, the psychiatrist stated that plaintiff wasn't supposed to have been in the safety cell because he didn't want to hurt himself or others.

## II.    Procedural Background

On December 16, 2013, plaintiff filed this lawsuit, *pro se,* against the individual officers at the jail whom he alleges were involved in the August 13 incident. Dkt. No. 1. On September 16, 2014, plaintiff amended his complaint. Dkt. No. 5. Following defendants' motion for partial summary judgment, plaintiff's excessive force claim remained the one claim to be adjudicated. Dkt. No. 48 at 18.

On October 24, 2016, the Court appointed counsel to represent plaintiff. Dkt. No. 68 at 1. On May 12, 2017, the Court granted defendants' motion to stay the case, in light of plaintiff's pending criminal proceedings. Dkt. No. 118.

In the meantime, in March 2022, plaintiff (represented by different counsel) proceeded to trial on a separate civil matter for an incident that occurred at the jail in 2018. *See Bell v. Williams,* No. 3:18-cv-01245-SI (N.D. Cal., Feb. 26, 2018). Following a jury trial and briefing and a hearing on injunctive relief, plaintiff prevailed on a *Monell* claim[2] against the City and was awarded

---

[2] *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

compensatory damages and an injunction. *See id.*, Dkt. Nos. 228, 267. On the verdict form, the jury answered "yes" to the question whether "plaintiff Vincent Bell [has] proven by a preponderance of the evidence that the City and County of San Francisco failed to train deputized staff on the proper use of the SORT and the safety cell[.]"[3] Dkt. No. 228 at 3.

On November 17, 2022, plaintiff moved to reopen this case, over defendants' objection. Dkt. Nos. 156, 158. The Court reopened the case and, on January 20, 2023, granted plaintiff's motion to lift the stay. Dkt. Nos. 159, 166.

On March 17, 2023, in a joint case management statement, plaintiff stated his intent to file a motion for leave to amend his complaint to add a *Monell* claim against the City. Dkt. No. 173 at 5. On June 27, 2023, following briefing and a hearing, the Court granted plaintiff's motion to file a second amended complaint ("SAC") to add the City as a defendant and to assert a claim of *Monell* liability against the City. Dkt. No. 192. Plaintiff filed the SAC on June 30, 2023. Dkt. No. 193. The City moved to dismiss the *Monell* claim. The Court denied the City's motion to dismiss the claim on statute of limitations grounds and granted the motion to dismiss for failure to state a claim. Dkt. No. 213. The Court granted plaintiff leave to amend to add allegations supporting his *Monell* claim.

Plaintiff filed the TAC on September 22, 2023. Dkt. No. 215. The City again moves to dismiss the *Monell* claim. Dkt. No. 217. Trial in this case is set to begin April 29, 2024. Dkt. No. 226.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

---

[3] "SORT" stands for "Special Operations Response Team." *See Bell v. Williams,* No. 3:18-cv-01245-SI, Dkt. No. 72 ¶ 1. There are no allegations regarding the SORT in this case.

1  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require

2  "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more

3  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

4  do." *Id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the

5  speculative level." *Id.*

6  In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's

7  allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los

8  Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true

9  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

10 inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "[T]he tenet that

11 a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

12 conclusions." *Iqbal*, 556 U.S. at 678.

13 Under Rule 12(b)(6), a claim may be dismissed based on the statute of limitations only when

14 "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon

15 Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan

16 Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears

17 beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the

18 claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

**DISCUSSION**

Pursuant to Rule 12(b)(6), the City now moves to dismiss plaintiff's second cause of action—the *Monell* claim—from the TAC. The City argues the claim "is time-barred, that the allegations fail to state a claim, and that the *Monell* claim is barred by judicial estoppel." Dkt. No. 217, Mot. at 1. In the alternative, the City moves for a more definite statement.[4]

---

[4] The City also moved to strike the TAC's references to another lawsuit filed against the jail by a different individual, which the TAC cited to show that the City "has had a policy of misusing or authorizing the misuse of the safety cell for improper purposes since at least 2009." *See* TAC ¶ 21 (citing *Silverman v. City & Cnty. of San Francisco*, No. 4:11-cv-01615-SBA (N.D. Cal., filed Apr. 1, 2011)). Judge Armstrong dismissed that case without prejudice for failure to prosecute. *See Silverman*, No. 4:11-cv-01615-SBA, Dkt. No. 154. In his opposition brief, plaintiff has agreed to

4

**I.      Statute of Limitations**

In the prior round of briefing, the parties debated whether plaintiff's *Monell* claim was timely brought. The Court observed that courts are split on the question of when a *Monell* claim accrues and that the Ninth Circuit has not addressed this question. *See* Dkt. No. 213 at 4-5. The Court indicated that it was not inclined to resolve the statute of limitations question on the pleadings. *Id.* at 7-8. The Court stated that it would "not dismiss the *Monell* claim at this time on statute of limitations grounds but will instead allow the parties to obtain further discovery . . . so that this matter may be resolved on a fuller factual record." *Id.* at 5-6.

The City again moves to dismiss the *Monell* claim on statute of limitations grounds, although the factual record before the Court is no more developed now than it was on the prior motion to dismiss.[5] The only change since the Court's prior order is the City's discovery of plaintiff's attempt in 2013 to amend the complaint in a different case that was then pending. Specifically, plaintiff filed a *pro se* complaint in March 2013, alleging a failure to provide adequate health care. *See Bell v. San Francisco Sheriff's Dep't*, No. 13-cv-1023-SI (pr) (N.D. Cal. Mar. 6, 2013). On August 28, 2013, the Court received a letter from plaintiff asking to add allegations regarding a retaliation that occurred around August 14, 2013, after Lt. Krol learned that plaintiff named Krol in a civil rights complaint. *Id.*, Dkt. No. 15. On October 7, 2013, the Court dismissed the case without prejudice for failure to pay the filing fee. *Id.*, Dkt. No. 18.

Nothing about the City's recent discovery of this prior case changes the Court's analysis on the statute of limitations. As discussed at the hearing, the Court has serious concerns about whether plaintiff's *Monell* claim is timely; nevertheless, for the reasons stated in the prior order, *see* Dkt. No. 213 at 4-6, the Court again DENIES the City's motion to dismiss the *Monell* claim on statute

---

withdraw the references to *Silverman* from his TAC. Dkt. No. 223, Opp'n at 19 n.7.

[5] The Court granted the City leave to take a three-hour deposition of plaintiff on the statute of limitations and facts underlying his *Monell* claim. Dkt. No. 213 at 8, 10. The Court gathers that the deposition has since taken place, though not in time for its substance to be included in the present motion.

5

1  of limitations grounds, without prejudice to renewal at summary judgment.

## II. *Monell* Claim

The City also argues that the TAC fails to state a viable *Monell* claim. Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior. See Board of Cnty. Comm'rs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To establish an official policy that would give rise to *Monell* liability, a plaintiff must allege facts to support one of the following to survive dismissal of his claim: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; or (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing authorities), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The TAC alleges that the City is liable under *Monell* because: (1) the City "has a policy and custom of misusing and authorizing the misuse of the safety cell, including for disciplinary and retaliatory purposes[;]" (2) the City "failed to train staff on how to transport inmates with disabilities to safety cells[;]" and (3) the "policy and custom of misusing and authorizing the misuse of the safety cell and improper transportation to the safety cell was ratified by Defendant Krol and by supervisors at the DPH [Department of Public Health]." TAC at 4-6.

In his opposition, plaintiff argues as a threshold matter that the Court need not evaluate each theory of *Monell* liability individually, and that if any one of the theories is adequately pled, the claim as a whole survives a motion to dismiss. *See* Opp'n at 13 (citing *Quinto-Collins v. City of Antioch*, No. 21-cv-06094-VC, 2022 WL 18475, at *2 (N.D. Cal. Jan. 3, 2022)). Given the late addition of the *Monell* claim to this case, and in light of the many discovery disputes that have come out of that new claim, the Court finds it appropriate to evaluate the *Monell* theories individually, in

the event that it helps focus the parties' litigation efforts.

### A.     Policy or Custom[6]

The Court agrees with the City that the TAC inadequately alleges the existence of a municipal policy or custom for *Monell* liability.  As the Court previously cautioned plaintiff, proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee is insufficient to establish the existence of a municipal policy or custom. *See* Dkt. No. 213 at 7 (citing *Rivera v. County of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d 1135, 1142 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).  The Court found that "[t]he SAC does not provide any details regarding other alleged instances of City employees misusing a safety cell[,]" and the TAC is likewise deficient.

In support of his theory, plaintiff alleges:

> 28. The deputy staff misuse safety cells knowing that behavioral health staff sign off on safety cell placements to avoid issues with the sheriffs, rather than ensuring that safety cells are only used as a last resort for inmates who present a danger to themselves or others or for inmates with grave disabilities.
>
> 29. Dr. Hellenga's testimony in *Williams* demonstrates that this practice was followed by multiple behavioral health staff on multiple instances and was endorsed by DPH supervisory staff.

TAC ¶¶ 28-29.[7]  The TAC explains that at the *Williams* trial, Dr. Hellenga, a former staff psychologist, testified "that she had falsified clinical records and misstated facts to justify keeping inmates in safety cells." *Id.* ¶ 16.  The TAC also states that Dr. Hellenga testified "that her colleagues and supervisors at the Department of Public Health ('DPH') had told her not to disagree with the sheriffs' placement of inmates into safety cells as that would make her job harder and her relationship with the sheriffs worse." *Id.* ¶ 18.

However, Dr. Hellenga's testimony is inapplicable to the facts of this case.  Plaintiff has

---

[6] In the TAC and in his brief, plaintiff alternatively refers to this theory as the "pattern-or-practice" theory.  The Court therefore uses these terms interchangeably.

[7] The TAC also cites to the allegations in *Silverman*; plaintiff has since agreed to withdraw those allegations. *See* n.4, *supra*.

7

alleged that the day after he was placed in the safety cell, an unnamed "jail psychiatrist came to interview me to ask why I was in the safety cell[.]" TAC, Ex. 1 at 6. When plaintiff told the psychiatrist what happened, the psychiatrist said that he was never supposed to be in the safety cell, as he did not want to hurt himself or others. *Id.* The TAC further alleges, "She let me right out the safety cell in less than 24 hours" despite jail policy that anyone who was put in the safety cell had to stay in there for 24 hours. *Id.* The TAC alleges, "The psychiatrist I [sic] didn't fit that policy and she let me out right this minute!!" *Id.*

In other words, the staff psychiatrist or psychologist on duty on August 14, 2013, recognized that plaintiff was not supposed to be in the safety cell and immediately released him. Thus, whether Dr. Hellenga ever falsified records or misstated facts to keep inmates in safety cells on other occasions is inapposite to the facts of this case. Additionally, Dr. Hellenga testified that she began working for Jail Behavioral Health in August 2017, so she would not have had any involvement in the August 2013 incident with plaintiff.[8]

The allegations regarding policy or custom are conclusory. The TAC has alleged only one additional incident of safety cell misuse, that is, plaintiff's 2018 safety cell placement that became the subject of the *Williams* lawsuit. These two incidents—more than four years apart—are by themselves insufficient to establish a custom or policy. *See Trevino*, 99 F.3d at 918 (the "custom must be so persistent and widespread that it constitutes a permanent and well settled city policy"; "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy") (citations and internal quotation marks omitted).

Because the TAC has failed to cure the deficiencies identified in the Court's prior order, the Court GRANTS the City's motion to dismiss the policy or custom theory of *Monell* liability, with prejudice.

---

[8] The TAC cites to Dr. Hellenga's *Williams* trial testimony, excerpts of which the City attaches to its request for judicial notice. *See* Req. Jud. Not., Ex. J. Although the Court will not grant judicial notice wholesale of all the documents the City attaches to its motion, the Court takes judicial notice of the undisputed fact that Dr. Hellenga testified in *Williams* that she first began working for Jail Behavioral Health in August 2017. *See id.* at 752:23-753:5; *see also* Fed. R. Evid. 201.

8

### B. Failure to Train

On the failure to train theory, the TAC alleges:

> 31. Defendant CCSF failed to train staff on how to transport inmates with disabilities to safety cells.
>
> 32. Deputy Malabed testified in *Williams* that Defendant CCSF did not train staff on how to place inmates into wheelchairs or gurneys for transportation to safety cells.
>
> 33. This department-wide inadequacy in Defendant CCSF's training resulted in constitutional violations in this case, in *Williams*, and likely resulted in constitutional violations for other inmates.
>
> 34. Moreover, Defendant CCSF's failure to train staff on how to place inmates into wheelchairs and gurneys for transportation to safety cells and the resulting constitutional violations should have been obvious to Defendant CCSF given that staff are assigned to transport inmates, including inmates with disabilities, to safety cells. The failure to provide adequate training constitutes deliberate indifference to inmates' constitutional rights.

TAC ¶¶ 31-34. With regard to Deputy Malabed's testimony, the TAC states, "During the *Williams* trial, Deputy Ronald Malabed, who worked in the training unit of the CCSF, testified that sworn staff are not specifically trained on how to transport inmates to safety cells using wheelchairs or gurneys." *Id.* ¶ 13.

The Court finds that plaintiff has sufficiently alleged *Monell* liability under a failure to train theory. "A pattern of similar constitutional violations" by untrained employees is ordinarily necessary to establish that the failure to train or supervise is a deliberate policy. *Connick v. Thompson*, 563 U.S. 51, 52 (2011). However, "[a] plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Brown*, 520 U.S. at 409). In particular, the Court is persuaded by the TAC's citation to the trial testimony of one of the City's own deputies, who worked in the training unit, that "sworn staff are not specifically trained on how to transport inmates to safety cells using wheelchairs or gurneys." *See* TAC ¶ 13. The TAC also provides detail around how this failure to

9

train caused plaintiff's harm *in this case*. Plaintiff alleges that, after officers pulled him to the ground and beat him outside of his cell, Officer Herron said to put plaintiff "in his chair and in his cell." *Id.*, Ex. 1 at 5. Lt. Krol then said, "<u>No</u>! Make him walk to the safety cell[.]" *Id.* Plaintiff then alleges that Officers Gatman and De Los Reyes "have my arms[,] force me to 'hop' on one leg" from his cell to the safety cell "over a hundred feet[.] They also drag me a lot!" *Id.*

These factual allegations, coupled with Deputy Malabed's testimony regarding the lack of training, are sufficient to show at this stage that "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *See Long*, 442 F.3d at 1186. Accordingly, the Court DENIES the City's motion to dismiss the failure to train theory from the TAC.

### C. Ratification

In its prior order, the Court stated that "if plaintiff pursues a ratification theory, plaintiff must be able to allege that an official with final policymaking authority approved the decisions at issue. [Citations.] It is unclear from the SAC who plaintiff is alleging that authorized policymaker is." Dkt. No. 213 at 7. With regard to the ratification theory, the TAC now identifies "Defendant Krol and supervisors at the DPH" as those with the requisite policymaking authority.

The TAC alleges, in relevant part,

> 35. The above-described policy and custom of misusing and authorizing the misuse of the safety cell and improper transportation to the safety cell was ratified by Defendant Krol and by supervisors at the DPH.
>
> 36. Defendant Krol and the DPH supervisors had the requisite policymaking authority as Defendant Krol was the watch commander who supervised deputies in August 2013 and as DPH *supervisors* were the ones encouraging subordinate staff members to authorize the misuse of the safety cell.

TAC ¶¶ 35-36.

As an initial matter, the Court notes that the TAC is unclear about whether Lt. Krol and the DHS supervisors *independently* "had the requisite policymaking authority" or whether they are somehow joint ratifiers. *See id.* ¶ 36. The TAC discusses "Defendant Krol and the DHS

supervisors" jointly in the ratification context.

With regard to the allegations about DPH supervisors, the Court finds these allegations are inconsistent with the facts underlying plaintiff's claim, for the reasons stated above regarding Dr. Hellenga's testimony. That is, plaintiff has alleged that a staff psychiatrist let him out of the safety cell immediately after interviewing him and sooner than he was eligible to be released, in contravention of jail policy. By his own account, then, plaintiff has alleged no ratification by a DPH supervisor with regard to his placement in the safety cell in August 2013, which is the question at issue *in this case*.

With regard to the allegations about defendant Krol, the Court agrees with the City that plaintiff still "has not identified a final policymaker let alone a plausible one[.]" *See* Mot. at 16. Plaintiff does not address this point in his opposition brief. The TAC alleges that defendant Krol and the DHS supervisors "had the requisite policymaking authority" but it provides no detail to support this assertion. *See* TAC ¶ 36. The TAC states that Deputy Malabed testified at the *Williams* trial "that supervisors are the staff members who determine whether an inmate should be placed in a safety cell." *Id.* ¶ 14. This is not the same thing as alleging that Lt. Krol had "final policymaking authority" regarding inmate placement in safety cells. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.[] The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986); *see also id.* at 483 n.12 ("[I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.").

For the reasons stated above, the Court GRANTS the City's motion to dismiss the ratification theory, with prejudice.

The Court DENIES the City's request for judicial notice of the twelve documents attached to the motion to dismiss, except as expressly stated elsewhere in this Order.

11

### III. More Definite Statement

The City also seeks a more definite statement, should the *Monell* claim survive dismissal, pursuant to Federal Rule of Civil Procedure 12(e). The City argues that the TAC, which attaches the allegations from plaintiff's handwritten *pro se* amended complaint, and which contains facts and parties that have since been dismissed from the case, "deprive[s] all Defendants of notice of the factual allegations that are still at play and raises serious questions concerning the viability of the ambiguous allegations presented." Mot. at 22. The City requests the Court order plaintiff "to provide a more definite statement including an express articulation of the facts that he still stands on, in a single complaint prepared by counsel[.]" *Id.* at 22-23.

The Court finds that ordering a more definite statement is not necessary and would only add further delay to this case, which has already been pending for ten years and where discovery is nearly complete. At this point, what remains in the case are: (1) the excessive force claim against Lieutenant Krol and Officers De Los Reyes, Gatman, Herron, and Lee; and (2) the *Monell* claim against the City, based on a failure-to-train theory.

The Court will, however, STRIKE the allegations of the TAC that relate to plaintiff's retaliation and disciplinary due process claims, neither of which survived the Court's February 2016 summary judgment ruling. *See* Dkt. No. 48. Specifically, the Court STRIKES the allegations contained in the TAC, Exhibit 1, page 6, line 23 (beginning with "Also other officers helped Lieutenant Krol…") through line 28; and TAC, Exhibit 1, page 7, lines 1-15 and line 18.

### IV. Discovery Dispute

The Court has reviewed the parties' discovery dispute statement regarding Topics 3 and 6 of plaintiff's Rule 30(b)(6) deposition notice. Dkt. No. 220. The Court finds that Topic 3 is overly broad and will not order that the City provide testimony on that topic.[9]

---

[9] Topic 3 seeks testimony on: "Any and all grievances and/or complaints regarding safety cells and/or placement of inmates within safety cells."

At the hearing, the parties disputed whether Topic 6 is moot.[10] The City states that after extensive attorney review of inmate grievances, it did not identify any grievances regarding the transportation of inmates with disabilities to safety cells. Counsel for plaintiff noted that Topic 6 is broader than the document request that the City references and that plaintiff requires a witness from the City who can make an admission regarding the existence of such grievances or complaints. The Court finds that Topic 6 is relevant and tailored to the *Monell* issue remaining in this case and ORDERS that the City provide testimony on Topic 6. To the extent that Topic 6 implicates privacy concerns for other inmates, the Court encourages the parties to meet and confer to fashion a suitable protective order.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the City's motion to dismiss the policy/custom and ratification theories of the *Monell* claim from the case, with prejudice. The Court DENIES the City's motion to dismiss the failure-to-train theory of the *Monell* claim.

The Court STRIKES the allegations contained in the TAC, Exhibit 1, page 6, line 23 (beginning with "Also other officers helped Lieutenant Krol…") through line 28; and TAC, Exhibit 1, page 7, lines 1-15 and line 18.

The Court ORDERS that the City provide Rule 30(b)(6) testimony on Topic 6, as described in the discovery dispute statement, Dkt. No. 220.

**IT IS SO ORDERED**.

Dated: November 21, 2023

SUSAN ILLSTON
United States District Judge

---

[10] Topic 6 seeks testimony on: "Any and all grievances and/or complaints regarding the transportation of inmates, including but not limited to disabled inmates, to and from safety cells."