1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VINCENT KEITH BELL,

Plaintiff,

v.

CHRISTOPHER KROL, et al.,

Defendants.

Case No. 13-cv-05820-SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 237

Now before the Court is defendants' motion for summary judgment.  Dkt. No. 237.  This matter came on for hearing on March 8, 2024.  For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion.

**BACKGROUND**

**I.       Factual Background**

Plaintiff Vincent Bell has been a pretrial detainee in the custody of the San Francisco County Jail since 2012. Dkt. No. 48 at 2.  This lawsuit stems from an incident on August 13, 2013, in which plaintiff alleges that officers at the jail used excessive force against him.[1]

The following allegations are taken from the third amended complaint, Exhibit 1, which contains the hand-written allegations from plaintiff's amended complaint that he filed *pro se* in September 2014.  *See* Dkt. No. 216.  Defendants dispute plaintiff's account of events and have provided declarations, video footage, and other evidence that they say contradicts plaintiff's

_____

[1] In his complaint and amended complaint, plaintiff alleged that the force was used on September 22, 2013.  However, in a later filing, plaintiff stated that he had the wrong date, and that the force had been used on August 13, 2013.  Dkt. No. 48 at 1.  The parties all agree that the incident in question took place on August 13, 2013.

United States District Court
Northern District of California

1    allegations.  The Court recites plaintiff's allegations here solely to provide context for the summary

2    judgment motion.

3        Plaintiff alleges that, on the date in question, he was beaten up by San Francisco Sheriff's

4    Department Lieutenant Christopher Krol and by officers Robin De Los Reyes, Denny Lee, Michael

5    Gatmen, and Shane Herron.  Plaintiff alleges that they first beat him outside of his cell, after plaintiff

6    was returning from the shower to his cell in his wheelchair.  Then they forced plaintiff – who has

7    one leg amputated – to "hop" on his remaining leg for over 100 feet to a safety cell.  He alleges,

8    "They also drag[ged] me a lot!"  *Id.* at 5.  Once in the safety cell, they beat him up again.  The next

9    day, a staff psychiatrist released plaintiff from the safety cell; after interviewing him about what

10   happened, the psychiatrist stated that plaintiff wasn't supposed to have been in the safety cell

11   because he didn't want to hurt himself or others.  At the time of the events giving rise to this lawsuit,

12   plaintiff was housed at the San Francisco County Jail in San Bruno, in what was then known as

13   County Jail #5, in Pod 3B.[2]

14

15   **II.    Procedural Background**

16       On December 16, 2013, plaintiff filed this lawsuit, *pro se,* against the individual officers at

17   the jail whom he alleges were involved in the incident.  Dkt. No. 1.  On September 16, 2014, plaintiff

18   amended his complaint, again naming the individual officers (but not the City and County of San

19   Francisco) as defendants.  Dkt. No. 5.  In September 2015, defendants moved for partial summary

20   judgment on plaintiff's causes of action for First Amendment retaliation and due process.  Dkt. No.

21   38.  Defendants did not move for summary judgment on plaintiff's excessive force claim.  *See id.*

22   On February 10, 2016, the Court granted the individual defendants' motion for partial summary

23   judgment, leaving plaintiff's excessive force claim as the one claim to be adjudicated.  Dkt. No. 48

24   at 18.  In that Order, the Court also denied plaintiff's August 2015 "motion to correct error," finding

25   that it was "actually a very tardy effort to amend his pleadings to add a claim under the Americans

26   with Disabilities Act" where the Court had previously given a deadline regarding amendment.  *Id.*

27

28
        [2] County Jail #5 has since been re-named as County Jail #3.  Dkt. No. 207 at 5 n.4.

United States District Court
Northern District of California

1    at 17.

2         On October 24, 2016, the Court appointed counsel to represent plaintiff.  Dkt. No. 68 at 1.

3    On May 12, 2017, the Court granted defendants' motion to stay the case, in light of plaintiff's

4    pending state court criminal proceedings, where he was at that time unrepresented and had no trial

5    date.  *See* Dkt. Nos. 118, 119 (Tr. of Proceedings) at 3:1-12.  On February 19, 2019, the Court issued

6    an order administratively closing the case.  Dkt. No. 152.

7         In March 2022, while this case was stayed, plaintiff (represented by different counsel)

8    proceeded to trial on a separate civil matter for an incident that occurred at the jail in January 2018.

9    *See Bell v. Williams,* No. 18-cv-01245-SI (N.D. Cal. Feb. 26, 2018).  Following a jury trial and

10   briefing and a hearing on injunctive relief, plaintiff prevailed on a *Monell* claim[3] against the City

11   and County of San Francisco and won compensatory damages and an injunction.  *See id.*, Dkt. Nos.

12   228, 267.  On the verdict form, the jury answered "yes" to the question whether "plaintiff Vincent

13   Bell [has] proven by a preponderance of the evidence that the City and County of San Francisco

14   failed to train deputized staff on the proper use of the SORT and the safety cell[.]"[4]  *Bell v. Williams,*

15   No. 18-cv-01245-SI, Dkt. No. 228 at 3.

16        On November 17, 2022, plaintiff moved to reopen this case, over defendants' objection.

17   Dkt. Nos. 156, 158.  The Court reopened the case and, on January 20, 2023, granted plaintiff's

18   motion to lift the stay.  Dkt. Nos. 159, 166.

19        On March 17, 2023, in a joint case management statement, plaintiff stated his intent to file

20   a motion for leave to amend his complaint to add a *Monell* claim against the City and County of San

21   Francisco ("the City" or "CCSF").  Dkt. No. 173 at 5.  On June 27, 2023, following briefing and a

22   hearing, the Court granted plaintiff's motion to file a second amended complaint ("SAC") to add

23   the City as a defendant and to assert a claim of *Monell* liability against the City.  Dkt. No. 192.

24   Plaintiff filed the SAC on June 30, 2023.  Dkt. No. 193.  The City moved to dismiss the *Monell*

25

26        _____

          [3] *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

27        [4] "SORT" stands for "Special Operations Response Team."  *See Bell v. Williams,* No. 18-
28   cv-01245-SI, Dkt. No. 72 ¶ 1.  There are no allegations regarding the SORT in this case.

United States District Court
Northern District of California

3

1    claim.   Dkt. No. 195.   The Court denied the City's motion to dismiss the claim on statute of

2    limitations grounds, finding the matter should be resolved on a fuller factual record, and granted the

3    motion to dismiss for failure to state a claim.  Dkt. No. 213 at 5-6, 7.  The Court granted plaintiff

4    leave to amend to add allegations supporting his *Monell* claim and also granted the City's motion to

5    re-open discovery for the purpose of obtaining *Monell*-related discovery.  *Id.* at 9-10.

6        Plaintiff filed the third amended complaint on September 22, 2023.  Dkt. No. 215 ("TAC");

7    *see also* Dkt. No. 216 ("TAC, Ex. 1").  The TAC states two causes of action: (1) excessive force

8    under 42 U.S.C. § 1983, Fourteenth Amendment, against the individual officers; and (2) *Monell*

9    liability under 42 U.S.C. § 1983, against the City.  The City again moved to dismiss.  Dkt. No. 217.

10   On November 21, 2023, the Court issued an Order granting in part and denying in part the City's

11   motion to dismiss the TAC.  Dkt. No. 229.  The Court granted the City's motion to dismiss the

12   policy/custom and ratification theories of the *Monell* claim, with prejudice.  The Court denied the

13   City's motion to dismiss the failure-to-train theory of the *Monell* claim.  Thus, what remained of

14   plaintiff's *Monell* claim was the theory that the City "failed to train staff on how to transport inmates

15   with disabilities to safety cells." *See* TAC ¶ 31.[5]  The Court explained in the Order, "As discussed

16   at the hearing, the Court has serious concerns about whether plaintiff's *Monell* claim is timely;

17   nevertheless, for the reasons stated in the prior order, *see* Dkt. No. 213 at 4-6, the Court again

18   DENIES the City's motion to dismiss the *Monell* claim on statute of limitations grounds, without

19   prejudice to renewal at summary judgment." Dkt. No. 229 at 5-6.

20       The individual defendants who remain in this case—Christopher Krol, Robin De Los Reyes,

21   Michael Gatmen, Shane Herron, and Denny Lee—and the City (collectively, "defendants") now

22   move for summary judgment on the *Monell* claim and on a portion of the excessive force claim.

23

24

25       [5] The *Monell* claim in the *Williams* case alleged liability "because (1) there is a pattern and practice of misusing the safety cell for punishment and retaliatory reasons rather than their intended
26   use; (2) the County has failed to train its deputized staff on the proper use of the S.O.R.T. and the safety cell; and (3) defendants Williams and Fisher are final policymakers who violated plaintiff's
27   rights."  *See Bell v. Williams*, No. 18-cv-01245-SI, Dkt. No. 130 at 13.  Only the failure-to-train theory survived summary judgment.  As to that theory, the Court stated, "Bell has raised triable
28   issues of fact as to whether the failure to train deputized staff about S.O.R.T. cell extraction and safety cell placement of inmates with disabilities resulted in constitutional violations." *Id.* at 17.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**LEGAL STANDARD**

2      Summary judgment is proper if the pleadings, the discovery and disclosure materials on file,

3  and any affidavits show that there is no genuine dispute as to any material fact and that the movant

4  is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the

5  initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v.*

6  *Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters

7  on which the non-moving party will have the burden of proof at trial.  The moving party need only

8  demonstrate to the Court that there is an absence of evidence to support the non-moving party's

9  case.  *Id.* at 325.

10     Once the moving party has met its burden, the burden shifts to the non-moving party to

11 "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting then

12 Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show

13 that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v.*

14 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . .

15 will be insufficient; there must be evidence on which the jury could reasonably find for the [non-

16 moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

17     In deciding a summary judgment motion, the Court must view the evidence in the light most

18 favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.

19 "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

20 from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment

21 . . . ."  *Id.*  However, conclusory, speculative testimony in affidavits and moving papers is insufficient

22 to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. Gen.*

23 *Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be

24 admissible.  Fed. R. Civ. P. 56(c)).

25

26

**DISCUSSION**

27     Defendants seek summary judgment on the *Monell* claim, based on various grounds,

28 including the statute of limitations, judicial estoppel, and the merits; and on a portion of the

5

1    excessive force claim, based on qualified immunity.

2

3    **I.      *Monell* Claim**

4           The Court finds that plaintiffs' *Monell* claim fails on statute of limitations grounds and

5    therefore does not reach the alternative bases for summary judgment that defendants provide in their

6    motion.

7

8                            **A.      Legal Standard**

9           The statute of limitations for claims under 42 U.S.C. § 1983 is "the personal injury statute

10   of limitations of the state in which the cause of action arose." *Alameda Books, Inc. v. City of Los*

11   *Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) (citations omitted).   In California, the statute of

12   limitations for personal injury claims is two years. *Id.* at 1041 & n.8.  While state law sets the statute

13   of limitations period, federal law determines when a claim accrues. *Bird v. Dep't of Hum. Servs.*,

14   935 F.3d 738, 743 (9th Cir. 2019).

15          Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the

16   injury which is the basis of the action." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044,

17   1048 (9th Cir. 2008) (quoting *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004)).

18   "The discovery rule requires the plaintiff to be diligent in discovering the critical facts of the case."

19   *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (per curiam) (citing *Bibeau v.*

20   *Pacific Nw. Research Found.*, 188 F.3d 1105, 1108 (9th Cir. 1999), *amended*, 208 F.3d 831 (9th

21   Cir. 2000)).  A plaintiff who does not actually know that his rights were violated will be barred from

22   bringing his claim after the running of the statute of limitations if he should have known in the

23   exercise of due diligence. *See Bibeau*, 188 F.3d at 1108.  "[T]he extent to which a plaintiff used

24   reasonable diligence is tested by an objective standard." *Volk v. D.A. Davison & Co.*, 816 F.2d

25   1406, 1417 (9th Cir. 1987) (citation omitted).  The Ninth Circuit "has upheld many lower court

26   decisions granting summary judgment motions when, as a matter of law, a plaintiff knew or should

27   have known of his injuries and failed to protect his rights in a timely fashion." *Id.* (citations omitted).

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**B.      Analysis**

In the *Monell* claim, plaintiff alleges that the City "failed to train staff on how to transport inmates with disabilities to safety cells."  TAC ¶ 31.  The TAC alleges that "Deputy Malabed testified in *Williams* [in March 2022] that Defendant CCSF did not train staff on how to place inmates into wheelchairs or gurneys for transportation to safety cells."  *Id.* ¶ 32.  Plaintiff states in his papers, "It was at that time that Mr. Bell realized that the injuries he had suffered in this case were not isolated but rather the result of a systemic failure by the City."  Dkt. No. 248 ("Opp'n") at 1.  The City argues: that Bell's *Monell* claim accrued when the underlying excessive force incident occurred, and thus he needed to file the claim no later than August 13, 2015; and that Bell cannot meet his burden to justify a discovery rule.

To begin, the parties cannot agree who bears the burden of proof on the issue of whether Bell's claim is time-barred.  The City says that plaintiff bears the burden to establish that the "discovery rule" applies, because plaintiff is the one invoking an exception to the general statute of limitations.  Dkt. No. 237 ("Mot.") at 8; Dkt. No. 249 ("Reply") at 4.  Plaintiff, without citation, states that the burden is on the City.  *See* Opp'n at 4 (Heading A: "The City Cannot Establish that Mr. Bell's Failure to Train Claim is Time Barred").  Both parties are correct, to an extent.  Although the statute of limitations is an affirmative defense, "[a]s the Ninth Circuit has long explained, 'the party seeking the benefit of the avoidance of the statute of limitations carries the burden of proof to establish the elements, . . . and all presumptions are against him since his claim to exemption is against the current of the law and is founded on exceptions.'"  *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 856 (N.D. Cal. 2020) (quoting *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 383 n.2 (9th Cir. 1979)) (internal brackets omitted).  "Thus, for the delayed discovery exception to apply, '[t]he burden is on the plaintiff to show diligence . . . .'" *Id.* (citations omitted).  Nevertheless, the statute of limitations question is before this Court on defendants' summary judgment motion.  Thus, the burden is on the City to establish the absence of evidence in support of plaintiff's invocation of the delayed discovery rule.

The Court finds the City has met its burden on summary judgment, as no reasonable juror could find, given the undisputed facts in this case, that plaintiff exercised reasonable diligence with

7

respect to his *Monell* claim.  Plaintiff argues that he first learned in March 2022 at the *Williams* trial

that the City failed to train staff on transporting inmates with disabilities to safety cells.  Opp'n at 4

& n.1 (citing Virk Decl., Ex. 2, Bell 2023 Dep. at 56:11-57:14).  During the *Williams* trial, Deputy

Ron Malabed testified as follows:

> Q. You also train sworn staff that if a prisoner refuses to walk to the safety cell, that they may use other mobile means, such as a gurney or a wheelchair, to move them?
>
> A. Correct.
>
> Q. And you train them on how to perform safety cell placement using a wheelchair or a gurney or a restraint chair for transport; right?
>
> A. No.  We give that as an option to transport, but we train on how to properly place them.  It's documented on videos on how we actually – well, excuse me.  That was for S.O.R.T.
>
> For S.O.R.T. videos, we have videos on how we perform a S.O.R.T.
>
> For safety cell, we demonstrate how to – options on where to place them.
>
> But we don't go over how to place them into wheelchairs or restraint chairs.  We put that as an option as a method of transport, but we don't actually physically show them how to place them in there.
>
> Q. Do you physically show them how to place people in a restraint chair?
>
> A. Yes.
>
> Q. And do you explain, as a part of your training, how a sergeant would utilize a wheelchair or a gurney in order to transport somebody to a safety cell?
>
> A. We explain that as an option that's in the policy, but because there is no specific training on how to transport, whether it be a combative inmate, onto a wheelchair – now, the restraint chair is different because the restraint chair does require knowledge of how to actually secure a person into that to do a safe transport.
>
> But as far as a gurney, a wheelchair, there's no specific training on how -- what method you should use to place them on there to move them.

Dkt. No. 248-2, Virk Decl., Ex. 1, Malabed Trial Test. at 244:4-245:11.

But plaintiff's assertion that he first learned in March 2022 of the facts underlying his failure-

to-train claim is belied by the undisputed factual record in this case and in *Williams*.  On June 16,

2021, plaintiff deposed Deputy Malabed.  Malabed testified that the safety cell policy did not address

8

United States District Court
Northern District of California

1   people with disabilities, nor did the training "specifically talk about persons with disabilities[.]"[6]

2   Mills Decl., Ex. Y, Malabed Dep. at 111:24-112:7; *see also id.* at 113:6-114:4.  In September 2021,

3   in the *Williams* case, Bell cited Malabed's deposition testimony in his opposition to the defendants'

4   motion for summary judgment.  *Bell v. Williams*, No. 18-cv-01245-SI, Dkt. No. 121 at 9 (". . . CCSF

5   does not train its deputized staff on the use of the SORT cell extraction or safety cell placement of

6   prisoners with disabilities. (Kim Dec., ¶ 12, Malabed Dep., 62:6-23, designated AEO.)").

7   _____

8   [6] This portion of Malabed's deposition testimony read as follows:

9   Q. When we looked at the policy on the safety cell, did the policy address people
    with disabilities?

10  [Objection from defense counsel.]

11  A. I don't recall addressing persons with disabilities on there.

12  Q. Do you do that in the training?

13

14  A. No.  We don't specifically talk about persons with disabilities, in our training.

15  Mills Decl., Ex. Y, Malabed Dep. at 111:24-112:7.  Malabed's deposition testimony continued:

16  The last question I asked you was whether or not you train the safety cell differently
    when it comes to prisoners with physical disabilities. Believe you testified -- or you
17  responded to that question with saying no. Is that correct?

18  A. Correct.

19  Q. Prisoners with physical disabilities need to be accommodated, correct?

20  [Objection from defense counsel.]

21
    THE WITNESS: I don't make the determination as to what type of accommodation
22  when it comes to safety cell placement and making a decision on -- you know, on
    what those accommodations are. I just deal with what is the potential for threat and,
23  you know, what options you have to use force.

24  Q. Okay. Do you know if there is a training on what kind of accommodations can
25  be provided to prisoners with physical disabilities in the safety cell?

26  A. Not that I'm aware of. I don't – I'm not aware of any training outline or training
    program that talks about, you know, including different types of disabilities
27  (inaudible) placement.

28  *Id.* at 113:6-114:4.

United States District Court
Northern District of California

1    Years earlier, in this case, plaintiff obtained similar information through discovery.   In

2    January 2017, he requested from the individual defendants: "Documents sufficient to show any

3    policy effective at the time of the incident relating to the detainees with physical disabilities, and, if

4    any such policy has changed since the time of the incident, documents sufficient to show those

5    changes."  Mills Decl., Ex. S at 4, RFP No. 3.  He also requested: "Documents sufficient to show

6    any training that you received or that was available to you on the use of force against detainees, on

7    detainees with physical disabilities, on the use of the safety cell, or on any other topic that may have

8    been relevant to your actions during the incident."  *Id.* at 4, RFP No. 7.  On March 17, 2017,

9    defendants responded to the policy request that "Defendants are unable to comply with this request

10   because no such documents exist."  Mills Decl., Ex. T  at 5, Suppl. Resp. to RFP No. 3.  In response

11   to the request for training documents, defendants responded with several policies, after the scope of

12   the request was narrowed through the meet and confer process.  *Id.* at 8, Suppl. Resp. to RFP No. 7.

13   Defendants went on to state that they had "not been able to locate" any related training documents.

14   *Id.*

15   Bell also deposed the individual defendants in spring 2017.  On April 4, 2017, defendant

16   Krol testified, with respect to training:

17   Q. Do you recall learning in any of these classes, the defensive  tactics classes,
     anything about how to place an inmate into a safety cell?
18

19   A. I can't recall specific classes.

20   Mills Decl., Ex. V at 264:12-15.  On April 19, 2017, defendant Gatmen testified:

21   Q. Have you ever been trained to carry inmates face down, with their hands
     handcuffed behind their back?
22

23   A. We've never been trained specifically for that, no.

24   Q. That's not a type of carry that you've been trained on?

25   A. No.

26   Mills Decl., Ex. W at 264:20-265:2.  On May 3, 2017, defendant Herron testified at deposition:

27   Q. Do you receive any training in your work as - - through the San Francisco
     Sheriff's Department on how best to carry an inmate?
28

10

A. No.

Q. Any training, for example, on the best way to carry an inmate without causing injury either to the inmate or to the sworn staff involved?

A. No.  Not necessarily.

Mills Decl., Ex. X at 134:16-24.

The Court is aware that it is generally inappropriate to resolve issues of credibility on summary judgment.  Although it strains credulity that Bell first learned of the City's lack of training in March 2022,[7] even accepting his version of events as true, no reasonable juror could find that Bell was diligent in uncovering the facts underlying his *Monell* claim.  As plaintiff acknowledges in his papers, to avail himself of the discovery rule, he needs to show that he moved with reasonable diligence in discovering the cause of his injury, here, the fact that the City failed to train on transporting inmates with disabilities to the safety cell.  *See* Opp'n at 8 (citing, *inter alia*, *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 581 (9th Cir. 2012) ("We have interpreted the 'question ... [of] what ... we mean by injury' with some flexibility, and held that a 'claim accrues' not just when the plaintiff experiences the injury, but 'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury.'")).  It follows that a plaintiff must also move with diligence in adding the *Monell* claim to his case.  *See Volk*, 816 F.2d at 1417 ("A district court may . . . grant a summary judgment motion if the uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraud but failed to file a timely complaint.").

To summarize the above, it appears that plaintiff first learned of the lack of training by the City in March 2017, during discovery.  Over the next few months, three of the individual defendants (Krol, Gatmen, and Herron) confirmed that they did not receive training on how to place an inmate into a safety cell or on the type of carry that was used on plaintiff here.  All of this occurred prior to the Court staying proceedings in May 2017.  In February 2018, plaintiff filed the *Williams* case on his own, naming the City as a defendant.  Between the effective date of the stay (May 12, 2017) and

---

[7] Bell has consistently maintained this position since he first sought to add the *Monell* claim, including at his October 2023 deposition.  *See* Virk Decl., Ex. 2, Bell 2023 Dep. at 56:11-57:14.

United States District Court
Northern District of California

1    the date the Court administratively closed this case (Feb. 19, 2019), the parties filed seven joint case

2    management statements—each indicating there was no basis to lift the stay—and appeared before

3    the Court for five case management conferences.  *See* Dkt. Nos. 126, 130, 133, 135, 137, 138, 140,

4    142, 145, 146, 150, 151.  In July 2019, plaintiff filed (still *pro se*) the second amended complaint in

5    *Williams* against the City and County of San Francisco and the San Francisco Sheriff's Department,

6    alleging, "The CCSF and SFSD should be held liable for failure to train their employees on proper

7    procedures to transport physically disabled inmates."  *Bell v. Williams*, No. 18-cv-01245-SI (N.D.

8    Cal.), Dkt. No. 14 at 9.  In June 2021, plaintiff learned further information about his failure-to-train

9    claim during Deputy Malabed's deposition in *Williams*.  Plaintiff then used the deposition testimony

10   to oppose summary judgment on the *Monell* claim in *Williams*.  Plaintiff waited until November

11   2022, nearly eight months after Deputy Malabed's testimony at the *Williams* trial, to ask the Court

12   to administratively re-open this case so it could consider lifting the stay.[8]  Taking all of these facts

13   together, the Court concludes that no reasonable juror could find that plaintiff exercised reasonable

14   diligence in bringing his *Monell* claim based on the undisputed procedural history of this case and

15   of his case in *Williams*.[9]

16          Plaintiff alternatively argues the *Monell* claim relates back to the filing of the initial

17   complaint (a theory plaintiff expressly disavowed at the motion to dismiss stage, *see* Dkt. No. 200

18   at 13 n.10).  Opp'n at 14-15.  Plaintiff now argues for application of the relation back doctrine "[i]n

19   the event the Court is persuaded by the City that Mr. Bell knew of the facts giving rise to a *Monell*

20   claim at or around the time of the underlying incident . . . ."  *See* Opp'n at 14.  Because the Court's

21   ruling on the *Monell* claim today rests on different grounds, i.e., a lack of reasonable diligence in

22

United States District Court
Northern District of California

23

24          [8] Plaintiff's November 2022 administrative motion to re-open the case and January 2023
     motion to lift the stay made no mention of a possible *Monell* claim.  *See* Dkt. Nos. 156, 161.  Plaintiff
25   first mentioned a *Monell* claim in the context of a scheduling dispute, as stated in a joint case
     management statement filed March 17, 2023.  *See* Dkt. No. 173 at 5.

26          [9] To be clear, the lack of diligence pre-dated counsel's appointment in this case.  Plaintiff
     quite capably litigated this case on his own through summary judgment, yet he never sought to bring
27   a *Monell* claim or to add the City as a defendant.  Plaintiff's *pro se* amended complaint filed in
     September 2014 sought $20 million from the City and County of San Francisco, even though
28   plaintiff had not named the City as a defendant.  *See* Dkt. No. 5 at 4.

1    bringing the claim, the Court need not reach the relation back argument.

2         The Court need not and does not reach the alternative grounds for summary judgment that

3    the City lays out in its motion, including the request to dismiss the claim for injunctive relief, which

4    is rendered moot by today's ruling.

5         Finally, the Court clarifies it is <u>not</u> reaching the legal question of when a *Monell* claim

6    accrues because, even accepting plaintiff's legal standard for accrual, the undisputed facts here do

7    not support plaintiff's invocation of the discovery rule.[10]

8         For the reasons stated above, the Court GRANTS the City's motion for summary judgment

9    on the *Monell* claim.

10

11   **II.    Qualified Immunity**

12        The individual defendants also move for summary judgment on a portion of the excessive

13   force claim, arguing they are entitled to qualified immunity with respect to *carrying* plaintiff to the

14   safety cell.  Mot. at 23-25.  Defendants argue that it is undisputed that Lee and De Los Reyes did

15   not carry Bell.  *Id.* at 24.  They also argue that Gatmen and Herron are entitled to qualified immunity

16   because they carried Bell at the direction of Lieutenant Krol.  They further argue that in August

17   2013 "the act of carrying Bell to the safety cell in lieu of placing him in his wheelchair did not

18   violate clearly established law."  *Id.*

19        Plaintiff counters by arguing that defendants waived this argument by not bringing it in their

20   motion for partial summary judgment filed back in September 2015.  Plaintiff also argues that the

21   qualified immunity theory fails on the law and on the disputed facts in this case.

22        The Court finds it proper to address defendants' argument, although the individual

23   defendants did not move on the excessive force claim at summary judgment in 2015.  The focus of

24   this case has shifted over the (many) years that the case has been pending.  In light of the filing of

25

26

27        [10] Although plaintiff calls it "good" law in the Ninth Circuit that a *Monell* claim accrues
     when the plaintiff learns the cause of their injury, *see* Opp'n at 7, "unsettled" would be a more apt
28   term.  The Court already addressed this in ruling on one of several motions to dismiss.  *See* Dkt. No.
     213 at 4-6.

United States District Court
Northern District of California

1      several amended complaints and the subsequent rulings on motions to dismiss, the Court will not

2      find that defendants' summary judgment motion in 2015 bars them from challenging a portion of

3      the excessive force claim on summary judgment today.

4          However, the Court concludes that the individual defendants are not entitled to qualified

5      immunity.  First, the Court agrees with plaintiff that numerous factual disputes remain, even simply

6      on the issue of transportation to the safety cell.  "Where such disputes exist, summary judgment is

7      appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-

8      moving party."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Barlow*

9      *v. Ground,* 943 F.2d 1132, 1136 (9th Cir. 1991)); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001)

10     ("A court required to rule upon the qualified immunity issue must consider . . . this threshold

11     question: Taken in the light most favorable to the party asserting the injury, do the facts alleged

12     show the officer's conduct violated a constitutional right?").

13         Defendants state that "the undisputed videos and declarations confirm [Bell] was carried"

14     rather than forced to hop on one leg or dragged, as Bell has alleged.  Reply at 13.  Not so.  The

15     videos hardly tell the whole story—they are blurry, the action is in stop-motion, and there is no

16     audio.  *See* Mills Decl., Ex. D, E, F.  At the moment of plaintiff's transportation from his pod to the

17     safety cell, there is such a large crowd of officers around plaintiff that it is not possible to see how

18     he is moving.  *See* Ex. D at 15:46:16-15:47:05; Ex. E at 15:47:10-15:47:53.  It is also unclear

19     whether the videos capture the entirety of Bell's transportation to the safety cell.  The first two

20     videos are taken from cameras mounted in Pod 3B.  Ex. D, E.  The third video shows officers in the

21     hallway leading to the safety cell.  Ex. F.  But it is unclear what, if anything, lies in between.

22         There is a moment, captured on camera, where the viewer can clearly see Bell as he is being

23     carried into the safety cell itself.  Ex. F at 15:46:01.  He is being transported face-down, his hands

24     cuffed behind his back.  The officers appear to be holding him by the ankle of his one leg and by

25     his handcuffed hands (or by the handcuffs themselves—it is hard to see).

26         The declarations add little clarity.  None of the declarations of the deputies describe the

27     method by which Bell was transported to the safety cell.  *See* Mills Decl., Ex. G, H, I, J.  Lieutenant

28     Krol declares that "Plaintiff was carried to the safety cell in a manner that minimized the risk of

United States District Court
Northern District of California

14

1    injury to the plaintiff and the deputies." Mills Decl., Ex. C, Krol Decl. ¶ 3. This is plainly a factual

2    dispute ill-suited for summary judgment. *See Wilkins v. City of Oakland*, 350 F.3d 949, 951 (9th

3    Cir. 2003) ("appellate review is generally limited to issues of law . . . and 'does not extend to claims

4    in which the determination of qualified immunity depends on disputed issues of material fact.'")

5    (internal citation omitted).

6          Nor is the Court persuaded by defendants' argument that "the act of carrying Bell to the

7    safety cell in lieu of placing him in his wheelchair did not violate clearly established law" in August

8    2013. Mot. at 24. This misapprehends the nature of plaintiff's claim. Unlike in *Williams*, plaintiff

9    here does not bring claim under the Americans with Disabilities Act ("ADA") for the denial of a

10   wheelchair during his transportation to the safety cell. Plaintiff's transportation to the safety cell is

11   part and parcel of his excessive force claim, which he alleges includes the officers beating him

12   outside his cell, forcing him to hop and dragging him to the safety cell, and then beating him again

13   inside the safety cell. The Court sees no reason—particularly now that the failure-to-train *Monell*

14   claim is gone from the case—to separate out the transportation of plaintiff from the incidents that

15   occurred before and after, where everything transpired in a matter of minutes and plaintiff brings no

16   distinct ADA claim regarding his transportation.[11]

17         Moreover, the cases that defendants cite are cases involving police use of force on mentally

18   ill individuals who were wielding weapons. *See* Mot. at 25 (citing *City & Cnty. of San Francisco,*

19   *Cal. v. Sheehan*, 575 U.S. 600 (2015); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 n.9 (9th

20   Cir. 2018)). These cases provide little guidance on the use of force against an unarmed inmate with

21   a physical disability such as plaintiff. The Court finds that a reasonable officer would not have

22   believed that the conduct alleged here was lawful in light of clearly established law and the

23   information the officer possessed. *See Saucier*, 533 U.S. at 202 ("The relevant, dispositive inquiry

24

25         ───────────────────────

26   [11] Because there is no need to parse out the transportation portion of the incident, the Court
     does not reach defendants' argument that the deputies were acting at Lieutenant Krol's direction or
27   that only some of the individuals carried Bell. The Court notes, however, that defendants misstate
     the record as to De Los Reyes. They assert in their motion that "[t]here is no dispute . . . that Lee[]
28   and De Los Reyes did not carry Bell." Mot. at 24. In his declaration, De Los Reyes states that he
     <u>did</u> carry plaintiff to the safety cell. Mills Decl., Ex. G, De Los Reyes Decl. ¶ 5.

United States District Court
Northern District of California

1       in determining whether a right is clearly established is whether it would be clear to a reasonable

2       officer that his conduct was unlawful in the situation he confronted."); *Barnard v. Theobald*, 721

3       F.3d 1069, 1076 (9th Cir. 2013) (qualified immunity properly denied for officers who mistakenly

4       believed arrestee was resisting because arrestee's perceived or actual resistance did not permit

5       limitless use of force but only that amount of force reasonably necessary to overcome the resistance);

6       *cf. Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (clearly established right to be free

7       of excessive force encompasses "well-established" right to be free of overly tight handcuffs) (citing

8       *Meredith v. Erath*, 342 F.3d 1057, 1061, 1063-64 (9th Cir. 2003); *LaLonde v. Cnty. of Riverside*,

9       204 F.3d 947, 960 (9th Cir. 2000)).

10              Finally, the City urges in its reply brief that the Court should *sua sponte* grant summary

11      judgment on the excessive force claim because plaintiff did not come forward with any admissible

12      facts that dispute the City's account of events.  Reply at 1-2.  But defendants moved on the excessive

13      force claim only as to how the officers *carried* Bell.  Defendants did not meet their initial burden on

14      this because the video footage and the declarations add little clarity as to what happened.  Plaintiff

15      was not required to present additional evidence, where defendants failed demonstrate the absence

16      of a genuine issue of material fact in the first instance.

17

18                                            **CONCLUSION**

19              For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART

20      and DENIES IN PART defendants' motion for summary judgment.  The Court GRANTS the motion

21      as to the second cause of action for *Monell* liability against the City and County of San Francisco.

22      The Court DENIES the motion for qualified immunity for the individual defendants.

23              The Court will rule separately on the pending administrative motions to seal.

24

25              **IT IS SO ORDERED**.

26      Dated: March 11, 2024

27                                                                  _____

28                                                                  SUSAN ILLSTON
                                                                    United States District Judge

16